UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRISCO D. SUTTON,

       Petitioner,

                           Case No. 19-cv-13238

  v.

                           Honorable George Caram Steeh

LES PARISH,

       Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

Brisco D. Sutton, ("Petitioner"), filed a *pro se* habeas corpus petition challenging his state convictions for assault with intent to commit murder, Mich. Comp. Laws § 750.83; conspiracy to assault with intent to do great bodily harm less than murder, Mich. Comp. Laws §§ 750.84, 750.157, and two counts of possession of a firearm in the commission of a felony, Mich. Comp. Laws § 750.227b.  The trial court sentenced Petitioner to prison for 15 to 30 years on the assault with intent to commit murder conviction, 5 to 10 years on the conspiracy conviction, and 2 years on the firearm convictions.

Petitioner raises two claims regarding the sufficiency of the evidence and a third claim alleging the ineffective assistance of trial counsel.  The State argues in an answer to the petition that the state courts reasonably rejected petitioner's claims. For the reasons stated below, the petition for a writ of habeas corpus is DENIED.

## I.  BACKGROUND

Petitioner was convicted following a jury trial in the Saginaw County Circuit Court, in which he was jointly tried with his co-defendant Travonte Marcel Brown.  This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See e.g. Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> This case arises out of a shooting. On February 18, 2017, Sutton and Brown travelled to the home of Everlena Huddleson. When they arrived, Sutton climbed onto the hood of the vehicle and, with a gun in his hand, yelled at the house's occupants to come out and fight. Brown banged on the front door until Huddleson opened it. Huddleson testified that Brown asked where the "men were" and told her to tell them to "come out and fight." Huddleson recounted that she told him to leave and that there were no "men" present. She stated that, at one point, Brown shoved the door open further, knocking her back against the couch. Around the same time, Antonio Buford, Huddleson's son, entered the room and exchanged words with Brown, who told him to come outside. Huddleson testified that she saw Sutton come up the stairs, then she heard a gunshot and Buford bent down and held his abdomen. Buford made his way to the bathroom dripping blood, and Brown and Sutton left. At trial, Brown testified that he went

to Huddleson's house because he saw the light on and wanted to resolve a dispute with Alonzo Mallet. Brown explained that in the days leading up to the shooting, Mallet had come to Brown's house drunk, waving a machete, and demanding that Brown come out and fight him. Brown stated that he did not intend to commit the crimes charged and had no knowledge of whether Sutton intended to commit the crimes. Sutton admitted that he shot Buford, but he claimed he acted in self-defense.

*People v. Brown*, No. 341321, 2019 WL 845832, at *1 (Mich. Ct. App. Feb. 21, 2019), *appeal denied sub nom. People v. Sutton*, 504 Mich. 947, 931 N.W.2d 323 (2019).

Petitioner seeks a writ of habeas corpus on the following grounds:

I.  The Court of Appeals erred in holding that there was sufficient evidence to support the conviction of conspiracy to commit assault with intent to do great body harm beyond a reasonable doubt.

II.  The Court of Appeals erred in holding that the prosecution presented sufficient evidence that Buford did not have a gun, which negates Sutton's claim that he acted in self-defense to prevent imminent death or imminent great bodily harm from being inflicted on himself or Brown.

III.  The Court of Appeals erred in holding that Mr. Sutton was not denied his Sixth Amendment right to the effective assistance of  counsel at trial.

## II.  STANDARD OF REVIEW

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."

- 4 -

*Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).   To obtain habeas relief, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

## III. DISCUSSION

### A. Claims # 1 and 2. The sufficiency of the evidence claims.

In his first claim, Petitioner argues that there was insufficient evidence to convict him of conspiracy to commit assault with intent to do great bodily harm.   In his second claim, petitioner argues that there was insufficient evidence to convict him of assault with intent to murder.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970).   But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979).   A court need not "ask itself whether *it* believes that the evidence at the trial

established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19 (internal citation and footnote omitted)(emphasis in the original).

A federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim merely because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 565 U.S. 1, 2 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.* For a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012). A state court's determination that the evidence does not fall below that threshold is entitled to "considerable deference under [the] AEDPA." *Id.*

Finally, on habeas review, a federal court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor was observed at trial. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir. 1992). A habeas court therefore must defer to the fact finder for its assessment of the credibility of witnesses. *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003).

Petitioner in his first claim argues that there was insufficient evidence to convict him of conspiracy to commit assault with intent to do great bodily harm.

Under Michigan law, the elements of assault with intent to do great bodily harm less than murder are: "(1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm *less than murder*." *Raybon v. United States*, 867 F.3d 625, 632 (6th Cir. 2017)(quoting *People v. Brown*, 267 Mich. App. 141, 703 N.W.2d 230, 236 (2005))(emphasis original). Assault with intent to do great bodily harm is a specific intent crime which requires "an intent to do serious injury of an aggravated nature," but an actual injury need not occur. *Id.* (internal citations omitted).

Under Michigan law, a conspiracy is defined as "a mutual agreement or understanding, express or implied, between two or more persons to a (sic) commit a criminal act." *Cameron v. Birkett,* 348 F. Supp. 2d 825, 839 (E.D. Mich. 2004)(quoting *People v. Carter*, 415 Mich. 558, 567; 330 N.W.2d 314 (1982)). "[A] two-fold specific intent is required for conviction: intent to combine with others, and intent to accomplish the illegal objective." *Carter*, 415 Mich. at 568. Direct proof of an agreement is not required, nor is proof of a formal agreement necessary. Rather, it is sufficient that the circumstances, acts, and conduct of the parties establish an agreement. *People v. Cotton*, 191 Mich. App. 377, 393; 478 N.W.2d 681 (1991). A conspiracy may be proven by circumstantial evidence or may be based on inference. *Id.*

The Michigan Court of Appeals reasonably concluded that there was sufficient evidence to support the conspiracy to assault with intent to do great bodily harm conviction, as follows:

> Viewing the evidence in the light most favorable to the prosecution, a rational jury could infer that after being harassed by Mallet for a number of days and after being shot at by Buford, Brown and Sutton decided to take matters into their own hands. Brown woke Sutton sometime between 4:00 a.m. and 5:30 a.m. and they went to Huddleson's house. Once there, Sutton stood on the hood of the vehicle, yelling for a fight, and holding a gun in his hand. Brown went up the steps, opened the screen door, and banged on the inside door until Huddleson opened it. He then demanded, repeatedly, that the men in the house come out

and fight. The record reflects that Brown and Sutton knew the occupants of the house included Buford and Mallet, so the demand that the "men" come out was a demand that both Buford and Mallet emerge. And both Brown and Sutton were yelling for the men to come out to fight. When issuing that challenge, Sutton had a gun in his hand. Although Brown claimed he did not know Sutton had a gun, the jury could reasonably infer that he saw Sutton on the hood of the vehicle with the gun in his hand. Moreover, Sutton testified that he carried a gun on a daily basis, and there was testimony that Sutton and Brown were "like brothers." Based on that testimony, the jury could reasonably infer that Brown knew Sutton carried a gun on his person as a matter of course. Thus, a jury could infer, based on the actions and circumstances, that Brown and Sutton formed an agreement to travel to Huddleson's residence and assault the men living there. Further, given that they brought a drawn gun into their challenge, the jury could also infer that they intended to inflict great bodily harm on Buford and Mallet should the circumstances permit.

*People v. Brown,* 2019 WL 845832, at *4.

The evidence clearly established that petitioner went with Mr. Brown to Ms. Huddleson's residence in the early morning hours to confront Mr. Mallet and Mr. Buford.  Petitioner was armed with a gun.  Petitioner stood on the hood of his car and demanded that the men inside come out and fight, while brandishing his firearm.  Mr. Brown knocked on the door of the house and requested that Mr. Mallet and Mr. Buford come out and fight.  In light of the foregoing, the Michigan Court of Appeals' determination that there was sufficient evidence to support petitioner's conviction for conspiracy to assault with intent to commit great bodily harm was not an unreasonable application

of clearly established federal law, so as to entitle petitioner to habeas relief on his first claim. *See Bradley v. Birkett*, 192 F. App'x 468, 480-81 (6th Cir. 2006).

Petitioner in his second claim argues that there was insufficient evidence to sustain his conviction for assault with intent to commit murder.

Petitioner's primary argument is that there was insufficient evidence to support his conviction because the prosecutor failed to disprove his self-defense claim.

Petitioner's claim is non-cognizable on habeas review.   Under Michigan law, self-defense is an affirmative defense. *See People v. Dupree,* 486 Mich. 693, 704, 712; 788 N.W.2d 399 (2010).  "An affirmative defense, like self-defense, 'admits the crime but seeks to excuse or justify its commission.  It does not negate specific elements of the crime.'" *People v. Reese*, 491 Mich. 127, 155, n. 76; 815 N.W.2d 85 (2012)(quoting *Dupree,* 486 Mich. at 704, n. 11).  Under Michigan law the prosecutor is required to disprove a claim of self-defense, *see People v. Watts*, 61 Mich. App. 309, 311, 232 N.W.2d 396, 398 (1975), however, "[p]roof of the nonexistence of all affirmative defenses has never been constitutionally required...." *See Smith v. United States,* 568 U.S. 106, 110 (2013)(quoting *Patterson v. New York*, 432 U.S. 197, 210 (1977)).  The Supreme Court and the Court of

Appeals for the Sixth Circuit have rejected the idea that the Constitution requires a prosecutor to disprove self-defense beyond a reasonable doubt. *See Gilmore v. Taylor*, 508 U.S. 333, 359 (1993)(Blackmun, J., dissenting)("In those States in which self-defense is an affirmative defense to murder, the Constitution does not require that the prosecution disprove self-defense beyond a reasonable doubt"); *Martin v. Ohio*, 480 U.S. 228, 233-36 (1987); *see also Allen v. Redman*, 858 F.2d 1194, 1197 (6th Cir.1988)(explaining that habeas review of sufficiency-of-the-evidence claims is limited to elements of the crimes as defined by state law and citing *Engle v. Isaac*, 456 U.S. 107 (1982), and *Duffy v. Foltz*, 804 F.2d 50 (6th Cir. 1986)).  Therefore, "the due process 'sufficient evidence' guarantee does not implicate affirmative defenses, because proof supportive of an affirmative defense cannot detract from proof beyond a reasonable doubt that the accused had committed the requisite elements of the crime." *Caldwell v. Russell,* 181 F.3d 731, 740 (6th Cir. 1999).  Petitioner's claim that the prosecutor failed to disprove his affirmative defense of self-defense is non-cognizable on habeas review. *Id.; Allen v. Redman,* 858 F.2d at 1200.

Even if this Court were to determine that petitioner's claim was cognizable, he still would not be entitled to habeas relief.  The Michigan Court of Appeals rejected petitioner's claim as follows:

- 11 -

In support of his self-defense claim, Sutton testified that before the shooting, Buford had threatened to kill him and had, on one occasion, shot at him while he was on the street. He stated that on the morning of the shooting, he observed Buford with a gun and, in light of his prior history with Buford, he fired a shot. Brown also testified that he saw Buford with a gun before the shooting. However, contrary to defendants' testimony, Buford testified that he did not have a gun, and Buford's mother testified that she did not see Buford with a gun. Therefore, although Brown and Sutton testified to a different sequence of events, it is not the role of this Court to interfere with a jury's "determinations regarding the weight of the evidence or the credibility of witnesses." *People v. Stevens*, 306 Mich. App. 620, 628; 858 N.W.2d 98 (2014). Thus, viewing the evidence in the light most favorable to the jury's verdict, there was sufficient evidence that Buford did not have a gun, which negates Sutton's claim that he acted to prevent *imminent* death or *imminent* great bodily harm from being inflicted on himself or Brown. Consequently, Sutton's sufficiency of the evidence argument is without merit.

*People v. Brown*, 2019 WL 845832, at *2 (emphasis original).

Under Michigan law, one can act lawfully in self-defense if he has an honest and reasonable belief that he is in danger of serious bodily harm or death, as judged by the circumstances as they appeared to the defendant at the time of the act. *Blanton v. Elo*, 186 F.3d 712, 713, n. 1 (6th Cir. 1999)(citing *People v. Heflin*, 434 Mich. 482; 456 N.W.2d 10 (1990)). For self-defense to be lawful, the evidence must show that: (1) the defendant honestly and reasonably believed that he was in danger; (2) the danger feared was death or serious bodily harm or imminent forcible sexual penetration; (3) the action taken appeared at the time to be immediately

- 12 -

necessary; and (4) the defendant was not the initial aggressor. *See Johnigan v. Elo,* 207 F. Supp. 2d 599, 608-09 (E.D. Mich. 2002)(citing *People v. Barker*, 437 Mich. 161, 165; 468 N.W.2d 492 (1991); *People v. Kemp*, 202 Mich. App. 318, 322; 508 N.W.2d 184 (1993); *People v. Deason*, 148 Mich. App. 27, 31; 384 N.W.2d 72 (1985)).

A federal court reviewing a state court conviction on habeas review that is "faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Cavazos v. Smith,* 565 at 7 (quoting *Jackson v. Virginia,* 443 U.S. at 326).   Petitioner and his co-defendant testified that Buford was armed with a weapon.  Mr. Buford and his mother testified that he did not have a firearm in his possession at the time of the shooting; the jury chose to believe Mr. Buford and his mother. Although there may have been some evidence to support petitioner's self-defense claim, "in light of the deference to be accorded to state-court factfinding under § 2254(e), as well as the traditional deference accorded to [the factfinder's] resolution of disputed factual issues," petitioner is unable to show that the Michigan Court of Appeals' unreasonably determined that the

prosecutor disproved petitioner's self-defense claim. *See Seymour v. Walker,* 224 F.3d 542, 552 (6th Cir. 2000).

Petitioner also appears to argue that there was insufficient evidence that he specifically intended to kill Mr. Buford, so as to sustain his assault with intent to commit murder conviction.

The Michigan Court of Appeals rejected the claim as follows:

> Viewing the facts in the light most favorable to the jury's verdict, Sutton and Brown travelled to Huddleson's house sometime between 4:00 a.m. and 5:30 a.m. When they arrived, Sutton climbed onto the hood of their vehicle, held his gun in his hand, and yelled for the occupants of the house to come out and fight, and Brown banged on the door until it was opened. When Buford appeared in the hallway, Sutton aimed his gun and pulled the trigger, striking Buford in the stomach. Therefore, we hold that the evidence was sufficient to justify a rational trier of fact to find beyond a reasonable doubt that Sutton assaulted Buford with the intent to kill.

*People v. Brown*, 2019 WL 845832, at *2.

Under Michigan law, the elements of assault with intent to commit murder in Michigan are: (1) an assault; (2) with an actual intent to kill; (3) which if successful, would make the killing murder. *See Warren v. Smith,* 161 F.3d 358, 361 (6th Cir. 1998); *see also Steele v. Withrow,* 157 F. Supp. 2d 734, 740 (E.D. Mich. 2001). The intent to kill element does not equate with murder. *Warren,* 161 F.3d at 361 (citing *People v. Taylor*, 422 Mich. 554; 375 N.W.2d 1, 7 (1985)). Thus, an intent to kill for purposes of this offense may

not be proven by an intent to inflict great bodily harm or a wanton and wilful disregard of the likelihood that the natural tendency of the acts will likely cause death or great bodily harm. *Id.* A conviction for assault with intent to commit murder must be premised upon a defendant's specific intent to kill. *Steele,* 157 F. Supp. 2d at 740 (citing *People v. Edwards*, 171 Mich. App. 613, 620; 431 N.W.2d 83 (1988)). The intent to kill, for purposes of the crime of assault with intent to commit murder, need not be proved by direct, positive, or independent evidence, and the trier of fact may draw reasonable inferences from the facts and evidence in determining the existence of an intent to kill. *See Taylor*, 422 Mich. at 567-68. In determining the defendant's intent, a court may take into account "[t]he nature of the defendant's acts constituting the assault; the temper or disposition of mind with which they were apparently performed, whether the instrument and means used were naturally adapted to produce death, his conduct and declarations prior to, at the time, and after the assault, and all other circumstances calculated to throw light upon the intention with which the assault was made." *Id.* at 568 (quoting *Roberts v. People*, 19 Mich. 401, 415-16 (1870)). The use of a lethal weapon will support an inference of an intent to kill. *Steele,* 157 F. Supp. 2d at 740; *People v. Ray*, 56 Mich. App. 610, 615; 224 N.W.2d 735 (1974).

In the present case, there was sufficient evidence for a rational trier of fact to conclude that petitioner specifically intended to kill Buford.  Evidence was presented at trial that petitioner and Buford had had prior altercations. The fact that petitioner intentionally pointed his loaded firearm at Buford, aimed in his direction, and shot him in the stomach or abdomen was sufficient evidence from which a reasonable factfinder could find beyond a reasonable doubt that petitioner actually intended to kill the victim. *See Johnigan v. Elo,* 207 F. Supp. 2d at 608.  Petitioner is not entitled to habeas relief on his second claim.

### B. Claim # 3. Ineffective assistance of counsel.

Petitioner claims he was denied the effective assistance of trial counsel.

To prevail on his ineffective assistance of counsel claims, petitioner must show that the state court's conclusion regarding these claims was contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). *See Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). *Strickland* established a two-prong test for claims of ineffective assistance of counsel: the petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687.

Petitioner's primary claim is that his trial counsel was ineffective for failing to introduce a videotape purporting to show Mr. Buford threatening to kill petitioner on a prior occasion.  In lieu of introducing this videotape, trial counsel had petitioner and petitioner's grandmother testify about the videotape and Mr. Buford's threats.

In the present case, petitioner did not move for a *Ginther*[1] hearing on his ineffective assistance of counsel claim, thus, the Michigan Court of Appeals limited their review of petitioner's ineffective assistance of counsel claim to mistakes which were apparent from the record. *People v. Brown*, 2019 WL 845832, at *5.  The Michigan Court of Appeals rejected the claim on the merits as follows:

> Sutton argues that his lawyer was ineffective for failing to introduce a video of Buford threatening to kill him. However, although a video was apparently available showing that Buford threatened Sutton, it appears that Sutton's lawyer made a strategic decision to introduce evidence of the threats through testimony from Sutton and Sutton's grandmother. Moreover, even if Sutton's lawyer's performance was deficient on this basis, Sutton cannot establish prejudice. Evidence of the threats was already before the jury, and, given that it rejected the self-defense theory, cumulative evidence supporting the existence of threats was not outcome determinative.

*Id.* (internal citation omitted).

---

[1] *People v. Ginther,* 390 Mich. 436, 212 N.W.2d 922 (1973).

When defense counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons, rather than through sheer neglect, and this presumption has particular force where an ineffective assistance of counsel claim is asserted by a federal habeas petitioner based solely on the trial record, where a reviewing court "may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive." *See Yarborough v. Gentry,* 540 U.S. 1, 5-6 (2003)(quoting *Massaro v. United States*, 538 U.S. 500, 505 (2003)).

In the absence of any evidence to the contrary, this Court must presume that counsel had strategic reasons for not attempting to introduce this alleged videotape into evidence, choosing instead to rely on the testimony of petitioner and his grandmother concerning Mr. Buford's prior threats to kill petitioner.  Petitioner has not even presented any evidence to the Michigan courts or to this Court to establish that this videotape even exists.  Moreover, the United States Supreme Court has held that habeas review under 28 U.S.C. §2254(d) is "limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).  *Cullen* would preclude the Court from considering any new evidence that petitioner would even want to present at this point in

support of this portion of his ineffective assistance of trial counsel claim under 28 U.S.C. §2254(d). *Cf. Campbell v. Bradshaw*, 674 F.3d 578, 590, n.3 (6th Cir. 2012)(declining to consider testimony taken in federal evidentiary hearing because it was not part of the state court record).

Assuming the existence of the videotape, the Michigan Court of Appeals reasonably concluded that trial counsel was not ineffective for failing to present this videotape but instead to rely on the testimony of petitioner and his grandmother to present his self-defense claim. The alleged ineffectiveness of counsel in failing to introduce the videotape of Mr. Buford threatening to kill petitioner in support of petitioner's self-defense claim was not prejudicial where this evidence would have been merely cumulative to testimony by petitioner and his grandmother that Mr. Buford had threatened to kill petitioner. *See Varney v. Booker*, 506 F. App'x 362, 367 (6th Cir. 2012); *see also Johnson v. Hofbauer*, 159 F. Supp. 2d 582, 607 (E.D. Mich. 2001).

Regardless of whether Mr. Buford had threatened petitioner in the past, the evidence established that petitioner and Mr. Brown went over to Ms. Huddleson's house in the early morning hours while petitioner was armed with a gun. Both defendants asked for the men inside to come out and fight. Petitioner was brandishing his gun at the time. Petitioner entered the house and shot Buford. Petitioner's self-defense claim was mostly likely rejected

because he was the initial aggressor; thus, petitioner was not prejudiced by counsel's failure to present the videotape. *Cf. West v. Berghuis,* 716 F. App'x 493, 497 (6th Cir. 2017)(trial counsel not ineffective for advising petitioner to plead guilty to second-degree murder rather than raise a self-defense claim at trial, where evidence indicated that petitioner was the aggressor). Petitioner is not entitled to relief on this claim.

Petitioner also argues that trial counsel was ineffective for failing to cross-examine several witnesses as to whether Mr. Buford's home had been searched for a gun.

"Courts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel." *Dell v. Straub,* 194 F. Supp. 2d 629, 651 (E.D. Mich. 2002). "Impeachment strategy is a matter of trial tactics, and tactical decisions are not ineffective assistance of counsel simply because in retrospect better tactics may have been available." *Id.*

The Michigan Court of Appeals rejected petitioner's claim as follows:

Next, Sutton argues that his lawyer should have cross examined the prosecution's witnesses differently with respect to whether Buford's home was searched for a gun. Sutton does not specify which witness or witnesses his lawyer should have cross examined and exactly what additional questions should have been asked. Nor has Sutton made an offer of proof as to what the witnesses would have testified to had they been more thoroughly cross-examined on this point. The record does show,

- 20 -

however, that a police detective testified he did not conduct a search of Buford's premises to see whether the latter possessed a firearm, and Sutton's lawyer used that fact during his closing argument. Given that the evidence on this point was used, and it is unclear what additional evidence may have been adduced, we conclude that Sutton has failed to establish his lawyer was ineffective on this basis.

*People v. Brown*, 2019 WL 845832, at *6.

A defendant does not suffer prejudice, as required to establish an ineffective assistance of counsel claim, when the jury hears on direct examination the evidence defendant feels counsel should have developed in cross-examination. *See Ross v. United States,* 339 F.3d 483, 495 (6th Cir. 2003).  The detective here testified that he did not conduct a search of Mr. Buford's home for a firearm following the shooting and petitioner's counsel used this fact in his closing argument.  Petitioner cannot show that he was prejudiced by counsel's failure to raise this issue on cross-examination. Petitioner is not entitled to relief on his third claim.

## IV.  Conclusion

The Court will deny the petition for a writ of habeas corpus.  The Court will also deny a certificate of appealability to Petitioner.  In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate

whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny Petitioner a certificate of appealability because he failed to make a substantial showing of the denial of a federal constitutional right. *Myers v. Straub,* 159 F. Supp. 2d 621, 629 (E.D. Mich. 2001). The Court will also deny Petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Id.*

## V. <u>ORDER</u>

Based upon the foregoing, IT IS ORDERED that the Petition for a Writ of Habeas Corpus is **DISMISSED WITH PREJUDICE**.

IT IS FURTHER ORDERED That a Certificate of Appealability is **DENIED**.

- 22 -

IT IS FURTHER ORDERED that Petitioner will be **DENIED** leave to appeal *in forma pauperis.*

Dated:  August 4, 2020

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on August 4, 2020, by electronic and/or ordinary mail and also on Brisco D. Sutton #427894, Oaks Correctional Facility, 1500 Caberfae Highway, Manistee, MI 49660.

s/Brianna Sauve
Deputy Clerk